**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
et al.,

       Plaintiffs,

   v.

DEBRA HAALAND, et al.,

       Defendants.

Civil Action No. 1:24-cv-00990-DLF

**MOTION AND MEMORANDUM OF THE AMERICAN PETROLEUM**
**INSTITUTE FOR LEAVE TO INTERVENE AS A DEFENDANT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................... ii

I.  INTRODUCTION AND BACKGROUND ................................................................... 1

    A.  Regulatory Context ............................................................................................ 2

    B.  Plaintiffs' Legal Challenge ................................................................................ 4

    C.  API's Interests in Plaintiffs' Legal Challenge ................................................... 5

II.  ARGUMENT .............................................................................................................. 7

    A.  Standard for Granting Intervention .................................................................... 7

    B.  API Meets All of the Requirements for, and Should Be Granted, Intervention as of Right For Claim I (BiOp). ...................................................... 8

        1.  API Has Timely Moved for Intervention. ............................................... 8

        2.  API Has Significant Protectable Interests in This Litigation. .................. 8

        3.  Disposition in Favor of Plaintiffs Will Harm API's Interests. ................ 11

        4.  API's Interests Will Not Be Adequately Protected by Existing Parties. ..................................................................................................... 12

    C.  In the Alternative, API Should Be Granted Permissive Intervention To Defend Against Both Claims in Plaintiffs' Complaint. ...................................... 14

III.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*County of San Miguel v. MacDonald,*
    244 F.R.D. 36 (D.D.C. 2007)........................................................................................... passim

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,*
    788 F.3d 312 (D.C. Cir. 2015)...........................................................................................9, 12

*Ctr. for Biological Diversity v. Salazar,*
    695 F.3d 893 (9th Cir. 2012) .................................................................................................13

*Ctr. for Sustainable Econ. v. Jewell,*
    779 F.3d 588 (D.C. Cir. 2015).................................................................................................6

*Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.,*
    684 F.3d 1242 (11th Cir. 2012) ..............................................................................................6

*Dimond v. District of Columbia,*
    792 F.2d 179 (D.C. Cir. 1986) ........................................................................................12, 13

*Donaldson v. United States,*
    400 U.S. 517 (1971)................................................................................................................8

*EEOC v. Nat'l Children's Ctr., Inc.,*
    146 F.3d 1042 (D.C. Cir. 1998) .............................................................................................8

*Friends of Animals v. Kempthorne,*
    452 F. Supp. 2d 64 (D.D.C. 2006) ................................................................................8, 9, 13

*Fund For Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003)........................................................................................7, 9, 11, 12

*Gulf Restoration Network et al. v. NMFS et al.,*
    No. 8:18-cv-1504, Dkt. 33 (M.D. Fla.)...................................................................................6

*Gulf Restoration Network et al. v. Zinke et al.,*
    No. 18-cv-1674, Dkt. No. 35 (D.D.C. Dec. 7, 2018)...............................................................7

*Kentuckians for Commonwealth, Inc. v. Rivenburgh,*
    317 F.3d 425 (4th Cir. 2003) .................................................................................................13

*Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne,*
    246 F.R.D. 315 (D.D.C. 2007)..............................................................................................15

*Nat. Res. Def. Council et al. v. Salazar et al.*,
No. 2:10-cv-1882, Dkt. No. 31 (E.D. La.) ................................................................7

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ................................................................11

*Nuesse v. Camp*,
385 F.2d 694 (D.C. Cir. 1967) ................................................................12, 15

*Ramsey v. Kantor*,
96 F.3d 434 (9th Cir. 1996) ................................................................3

*Roeder v. Iran*,
333 F.3d 228 (D.C. Cir. 2003) ................................................................9

*Sierra Club et al. v. Nat'l Marine Fisheries Serv. et al.*,
No. 8:20-CV-03060 (D. Md.), Dkt. No. 55 ................................................................4, 11

*Sierra Club et al. v. Nat'l Marine Fisheries Serv. et al.*,
No. 8:20-CV-03060, Dkt. No. 55 ................................................................6

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ................................................................9

*Sierra Club v. Van Antwerp*,
523 F. Supp. 2d 5 (D.D.C. 2007) ................................................................14

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ................................................................12

*United States v. Am. Tel. & Tel. Co.*,
642 F.2d 1285 (D.C. Cir. 1980) ................................................................8

*Voltage Pictures, LLC v. Vazquez*,
277 F.R.D. 28 (D.D.C. 2011) ................................................................8

*WildEarth Guardians v. Bernhardt*,
No. 20-cv-00056, Dkt. No. 27 (D.D.C. May 14, 2020) ................................................................7

*WildEarth Guardians v. Haaland*,
No. 21-cv-175-RC, Dkt. No. 22 (D.D.C. Apr. 20, 2021) ................................................................7

**Statutes**

5 U.S.C. § 553(e) ................................................................15

16 U.S.C. §§ 1531(b), 1536(a)(2) ................................................................13

16 U.S.C. § 1536(a)(2)................................................................2, 3

123374346.6 0078439-00070

16 U.S.C. § 1536(b) ............................................................................................3

16 U.S.C. § 1536(b)(3)(A) ..................................................................................3

16 U.S.C. § 1536(b)(4) .......................................................................................3

43 U.S.C. §§ 1337, 1340, 1351 ...........................................................................9

**Rules**

*Fed. R. Civ. P. 24 .....................................................................................2, 7, 11

Fed. R. Civ. P. 24(a) ................................................................................... passim

Fed. R. Civ. P. 24(b) ..................................................................................8, 14, 15

Fed. R. Civ. P. 24(c) .........................................................................................16

**Regulations**

30 C.F.R. § 550.201 ...........................................................................................10

50 C.F.R. § 402.14(a) ..........................................................................................3

50 C.F.R. § 402.14(h) ..........................................................................................3

123374346.6 0078439-00070

# I.     INTRODUCTION AND BACKGROUND

In this case, Plaintiffs Center for Biological Diversity ("CBD") and Dr. Stuart Pimm seek to invalidate and set aside a 2018 biological opinion ("BiOp") issued under Section 7 of the Endangered Species Act ("ESA") by the U.S. Fish and Wildlife Service ("FWS"). Dkt. 1 ¶¶ 133-137. The BiOp is the product of a required consultation between FWS and two other federal agencies, the Bureau of Ocean Energy Management ("BOEM") and the Bureau of Safety and Environmental Enforcement ("BSEE"). The BiOp evaluates the impact of oil and gas leasing, exploration development, production, decommissioning, and related activities on the Gulf of Mexico Outer Continental Shelf ("OCS") for a 10-year period (more than six of which have already passed). Important here, the BiOp is a prerequisite to BOEM and BSEE's approval process and permitting activities for oil and gas activities in the Gulf of Mexico. BOEM and BSEE have already processed tens of thousands of oil and gas permits in reliance on the BiOp.

A substantial amount of activities regulated under the BiOp are conducted by members of proposed intervenor the American Petroleum Institute ("API"). API represents nearly all of the companies engaged in oil and gas leasing, exploration development, production, decommissioning, and related activities evaluated in the BiOp. Because the BiOp is a prerequisite to permitting those activities, this lawsuit directly implicates the interests of API and its members. Accordingly, API seeks intervention as of right or in the alternative, permissive intervention, to protect those interests.

In addition to invalidating the BiOp, Plaintiffs seek to compel FWS to respond to Plaintiff CBD's 2022 rulemaking petition to amend the ESA consultation regulations, and to respond to a 2021 "letter" from Dr. Pimm requesting the agency rescind an agency guidance memorandum from 2008 that addresses the scope of ESA consultations for activities that result in the emissions of greenhouse gases. Dkt. 1 ¶¶ 138-144. These consultation regulations, and the

guidance memorandum, apply to nearly all federal approvals for oil and gas activities, and thus directly impact API's members. API seeks permissive intervention to protect its interests in this petition-related claim and to assert specific arguments including mootness and jurisdictional defenses.

Pursuant to Federal Rule of Civil Procedure 24 ("Rule 24"), API seeks to protect its and its members' unique interests in the BiOp and respectfully requests that the Court grant its motion to intervene as a defendant in this case as a matter of right with full rights of participation with respect to Plaintiffs' first claim challenging the BiOp or, in the alternative, exercise its discretion to permit its intervention. In addition, API respectfully requests that the Court exercise its discretion to permit its intervention to defend against Plaintiffs' second claim based on Plaintiff CBD's petition for rulemaking. If granted intervention, API intends to participate in all aspects of this case, including but not limited to, any interim requests for injunctive relief, defending the challenged agency decisions on the merits, participating in any remedy proceedings, participating in any settlement discussions, and filing (or defending against) any appeal of appropriate interlocutory orders or final decisions in this case.

Pursuant to Local Civil Rule 7(m), counsel for API consulted with counsel for Plaintiffs and the Federal Defendants regarding the relief requested herein and made a good faith effort to narrow areas of disagreement. Counsel for Federal Defendants has indicated that Federal Defendants take no position on this motion. Counsel for Plaintiffs has indicated that Plaintiffs oppose the motion.

## A.    Regulatory Context

Section 7 of the ESA requires federal agencies to ensure that their actions are "not likely to jeopardize the continued existence" of ESA-listed species or "result in the destruction or adverse modification of [the critical] habitat of such species." 16 U.S.C. § 1536(a)(2). To meet

this requirement, a federal "action agency" is required to consult with the applicable federal "consulting agency" regarding actions that may adversely affect ESA-listed species. *Id.*; 50 C.F.R. § 402.14(a). The consulting agency evaluates those effects and completes the Section 7 consultation by issuing a biological opinion addressing whether the action is likely to jeopardize ESA-listed species or adversely modify critical habitat. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14(h). Action agencies must comply with these procedural obligations before issuing a license or permit that may affect ESA-listed species.

If the consulting agency finds that an action is likely to jeopardize or adversely modify critical habitat, it will propose a "reasonable and prudent alternative" to modify or place certain conditions on the proposed action. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h). For proposed actions (or reasonable and prudent alternatives) that are *not* likely to jeopardize listed species or adversely modify critical habitat, the consulting agency will issue a statement authorizing any "incidental take" from the proposed action along with "reasonable and prudent measures" to minimize the impacts of the authorized incidental take. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(h). The incidental take statement is "functionally equivalent to a permit because the activity in question would, for all practical purposes, be prohibited but for the incidental take statement." *Ramsey v. Kantor*, 96 F.3d 434, 444 (9th Cir. 1996).

As applied here, FWS, the consulting agency, engaged in comprehensive Section 7 consultation regarding Gulf of Mexico oil and gas leasing, exploration, development, production, and decommissioning activities authorized by BOEM and BSEE, the action agencies.[1] The 2018

---

[1] The U.S. Environmental Protection Agency and National Marine Fisheries Service's Permits and Conservation Division were also involved as action agencies regarding certain authorizations made by those agencies for oil and gas activities in the Gulf of Mexico.

BiOp is one of several biological opinions that have been issued to cover oil and gas activities in the Gulf of Mexico, dating back to 1979.

In July 2010, BOEM and BSEE requested that National Marine Fisheries Service ("NMFS") and FWS reinitiate the ESA consultation on oil and gas activities in the Gulf of Mexico following the Deepwater Horizon explosion and oil spill ("DWH"). In September 2010, NMFS and FWS issued letters agreeing that reinitiation was necessary. After engaging in a multi-year consultation process, FWS completed the consultation and issued its BiOp covering the species that fall within its jurisdiction on April 20, 2018. NMFS issued a corresponding biological opinion on March 13, 2020, covering species that fall within its jurisdiction separate from FWS. Plaintiff CBD has challenged the biological opinion issued by NMFS in a separate lawsuit, and the court there granted leave to API to intervene as a defendant. *See Sierra Club et al. v. Nat'l Marine Fisheries Serv. et al.*, No. 8:20-CV-03060 (D. Md.), Dkt. No. 55.

The 2018 BiOp evaluates all oil and gas activities for a 10-year period. BOEM and BSEE have relied on the BiOp in issuing oil-related approvals in the Gulf of Mexico for the last six years. During that time, BOEM and BSEE have issued tens of thousands of permits in reliance on the BiOp. *See infra* Section II.B.3.

**B.** **Plaintiffs' Legal Challenge**

Plaintiffs filed this lawsuit almost six years after FWS finalized the 2018 BiOp. Plaintiffs contend that the BiOp violates the ESA and Administrative Procedure Act ("APA") for alleged failures to adequately consider climate change impacts and risks of oil spills resulting from oil and gas operations in the Gulf of Mexico, along with reliance on inadequate mitigation measures and the lack of an incidental take statement. Plaintiffs' Complaint, Dkt. 1, ¶¶ 133-137. To remedy these alleged violations, Plaintiffs ask the Court to declare the BiOp invalid for violating

the ESA and APA in part for "apparent reliance on the M-Opinion," to vacate and remand the BiOp, and for other relief the Court deems just and proper. *Id.*, Requested Relief, ¶¶ 1-3.

Plaintiffs also contend that FWS violated the APA when it failed to timely respond to a February 2021 letter from Harvard Law School (signed on by Plaintiff Dr. Pimm and certain members of CBD) regarding a 2008 Secretary of the Interior legal memorandum, and a 2022 rulemaking petition filed by Plaintiff CBD to generally amend ESA-related regulations. *Id.* ¶¶ 138-144. To remedy these alleged violations, Plaintiffs ask the Court to order the Secretary of the Interior to respond to CBD's 2022 general rulemaking petition (but not to the 2021 letter), and for other relief the Court deems just and proper. *Id.* ¶ 4.

**C.     API's Interests in Plaintiffs' Legal Challenge**

API is the primary national trade association of the oil and gas industry. API represents nearly 600 member companies involved in major aspects of the U.S. oil and natural gas industry, including explorers, producers, refiners, suppliers, pipeline operators, marine transporters, and service and supply companies.[2] Declaration of Holly Hopkins ("Hopkins Decl.") ¶ 3. Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and gas industry capable of meeting the energy needs of the nation in an efficient and environmentally responsible manner. *Id.* One of API's purposes includes representation of the interests of the oil and gas industry in litigation. *Id.* API also develops oil and gas standards, conducts and sponsors research, engages with regulatory agencies, and participates in regulatory processes on behalf of its members and the oil and gas industry. *Id.*

API's members conduct many of the activities addressed in the BiOp and are therefore regulated by the terms of the BiOp. *Id.* ¶¶ 5-8. Almost all of those activities occur in the Gulf of

_____

[2] A complete list of API's members is available online. *See* API Members, https://www.api.org/membership/members (last visited June 12, 2024).

Mexico in areas offshore of Texas, Alabama, or Louisiana, with most of the associated vessel traffic to those areas originating from the Port of Galveston, Texas; Mobile, Alabama; and the Port of Fourchon, Port of Morgan City, and Port of Iberia, Louisiana. *Id.* ¶ 6. Almost all of API's members who conduct the activities addressed in the BiOp either are headquartered or have offices in Houston, Texas, or New Orleans, Louisiana. *Id.*

API seeks to intervene because the relief requested by Plaintiffs, including vacatur and remand of the BiOp and other unspecified injunctive relief, could have severe negative impacts on API and its members. *Id.* ¶¶ 10-12. For example, vacatur and remand of the BiOp would jeopardize API's members' ability to carry out their exploration, development, and production activities in the Gulf of Mexico in compliance with the ESA. *Id.* ¶ 10. Additionally, any settlement of this action would directly implicate and potentially negatively impact the interests of API or its members, which are adverse to both the Plaintiffs and the Defendants. *Id.* API also seeks to intervene to fulfill its organizational missions to advocate for the lawful conduct of oil and gas activities in the Gulf of Mexico and to support the oil and gas industry in the United States. *Id.* ¶¶ 4-6. Indeed, courts have routinely granted API's motions to intervene in lawsuits brought by plaintiffs challenging governmental actions with respect to oil and gas activities, including a lawsuit to compel NMFS to issue a companion biological opinion addressing oil and gas activities in the Gulf of Mexico in response to the July 2010 request for reinitiation submitted to both FWS and NMFS after the DWH oil spill.[3] *See Gulf Restoration Network et al. v. NMFS et al.*, No. 8:18-cv-1504, Dkt. 33 (M.D. Fla.).

---

[3] *See, e.g., Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (challenge to five-year leasing program); *Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242 (11th Cir. 2012) (challenge to lease sales and use of categorical exclusions to approve exploration plans); *Sierra Club et al. v. Nat'l Marine Fisheries Serv. et al.*, No. 8:20-CV-03060, Dkt. No. 55 (challenge to programmatic biological opinion governing federally authorized oil and gas

Furthermore, API seeks permissive intervention only to defend against Plaintiffs' contention that FWS has failed to respond to Plaintiff CBD's 2022 general rulemaking petition because if FWS were to respond and amend its regulations to expand the scope of the Section 7 consultation process as argued by the Plaintiffs, it would impact all agency actions governing oil and gas-related activity in the nation. The very object of Plaintiffs' legal claim premised on a February 2021 informal letter and a separate 2022 general rulemaking petition is to target the oil and gas industry.

## II. ARGUMENT

### A. Standard for Granting Intervention

Rule 24 provides for two types of intervention. "Intervention of right" requires the court to permit anyone to intervene upon timely motion who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of intervention would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).

---

activities in the Gulf of Mexico); *WildEarth Guardians v. Haaland*, No. 21-cv-175-RC, Dkt. No. 22 (D.D.C. Apr. 20, 2021) (challenge to oil and gas lease sales); *WildEarth Guardians v. Bernhardt*, No. 20-cv-00056, Dkt. No. 27 (D.D.C. May 14, 2020) (same); *Gulf Restoration Network et al. v. Zinke et al.*, No. 18-cv-1674, Dkt. No. 35 (D.D.C. Dec. 7, 2018) (same); *Nat. Res. Def. Council et al. v. Salazar et al.*, No. 2:10-cv-1882, Dkt. No. 31 (E.D. La.) (challenge to certain oil and gas exploration activities, namely seismic surveys, in the Gulf of Mexico).

"Permissive intervention," on the other hand, allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising discretion under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998).

## B. API Meets All of the Requirements for, and Should Be Granted, Intervention as of Right For Claim I (BiOp).

API satisfies each of the four requirements for intervention as of right with respect to Claim I (BiOp). These requirements are addressed, in turn, below.

### 1. API Has Timely Moved for Intervention.

The timeliness of a motion to intervene is judged by (1) how far the underlying suit has progressed, (2) the purpose for which intervention is sought, (3) the need for intervention to preserve the movant's rights, and (4) any prejudice to the existing parties by the resulting delay. *See United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). This litigation is in its earliest stages. Federal Defendants have not yet filed their answer, and API has prepared and presented a proposed Answer that can be immediately filed if the Court grants this motion. Accordingly, intervention is timely, and no prejudice, delay, or inefficiency will result from intervention.

### 2. API Has Significant Protectable Interests in This Litigation.

A movant must demonstrate a "'significantly protectable interest.'" *Voltage Pictures, LLC v. Vazquez*, 277 F.R.D. 28, 31 (D.D.C. 2011) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Proposed intervenors of right in the D.C. Circuit "need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Friends of Animals v. Kempthorne*,

452 F. Supp. 2d 64, 69 (D.D.C. 2006) (internal quotation marks and citation omitted). A showing of Article III standing is sufficient to establish the existence of a legally protected interest for purposes of Rule 24(a). *Fund For Animals*, 322 F.3d at 735.[4] "The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015).

API has legally protectable interests in this litigation and standing here is "self-evident." *See Fund For Animals*, 322 F.3d at 734 ("[F]or the purpose of determining whether standing is self-evident, we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property."). The exploration and drilling activities of API's members in the Gulf of Mexico depend upon the BiOp, the very "object of" Plaintiffs' legal challenge. *See Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002) (standing is easily established when a party's activities are the ultimate object of the legal challenge); *County of San Miguel v. MacDonald*, 244 F.R.D. 36, 46 (D.D.C. 2007) (the challenged listing decision and resulting economic consequences implicated intervenors-applicants' property interests, thereby establishing standing and a legally protected interest).

Offshore oil and gas development is carried out exclusively by oil and gas companies, who acquire leases through a sealed bidding process conducted by BOEM, and then engage in exploration efforts that, if successful, may lead to development and production. *See, e.g.*, 43 U.S.C. §§ 1337, 1340, 1351; Hopkins Decl. ¶ 4. Operations for the exploration and development of oil and gas resources on a lease—including drilling—cannot legally proceed unless BOEM

---

[4] Conversely, "the District of Columbia Circuit has held that 'any person who satisfies Rule 24(a) will also meet Article III's standing requirement.'" *Friends of Animals*, 452 F. Supp. 2d at 70 (quoting *Roeder v. Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003)).

and BSEE have approved all requisite plans and permits. *See* 30 C.F.R. § 550.201; *id.* §§ 550.211-.235; *id.* §§ 550.241-.273; *id.* § 550.281(a)(1); *id.* §§ 250.410-.418; *id.* §§ 250.465-.469. If the BiOp is vacated as requested by Plaintiffs, then BOEM and BSEE cannot ensure their approval of oil and gas-related plans and permits comply with the ESA. This would upend and stall BOEM and BSEE's approval process of plans and permits under new and existing leases.

API's members currently operate many offshore wells in the Gulf of Mexico. Hopkins Decl. ¶ 6. API members are directly engaged in the resulting exploration and production and have for decades been among the principal explorers and developers of offshore leases throughout the United States, including in the Gulf of Mexico OCS. *Id.* API members include federal leaseholders that have expended significant sums to obtain oil and gas leases from the government for the opportunity to explore for and develop valuable oil and gas resources throughout the Gulf of Mexico OCS. *Id.* ¶ 5. API members also include lease operators and service companies, which conduct the oil and gas exploration and development activities— including, *inter alia*, drilling operations—on OCS leases. *See id.* ¶ 6. API's members also include companies that conduct geophysical and geological exploration activities and provide support services for offshore oil and gas development. *Id.*

In addition, API coordinates and represents the interests of its members to advance oil and gas activities in the Gulf of Mexico and to help support the U.S. oil and gas industry. *Id.* ¶¶ 4-6. API conducts and sponsors research, engages with regulatory agencies, and participates in regulatory processes on behalf of its members and the oil and gas industry. *Id.* ¶ 4.

Plaintiffs' complaint is inextricably linked to oil and gas development activities—like those of API's members—that are governed by the challenged BiOp. As detailed below, the relief sought by Plaintiffs threatens to significantly impair these interests. *County of San Miguel*,

244 F.R.D. at 46. Thus, API satisfies the second requirement for intervention as of right for the first claim.

### 3. Disposition in Favor of Plaintiffs Will Harm API's Interests.

The test for impairment under Rule 24 focuses on practical effects. The movant must show that "'as a practical matter,'" its interest may be impaired or impeded, which could occur as a result of trial or settlement. *Id.* at 47 (quoting Fed. R. Civ. P. 24(a)(2)); *see also Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) ("[T]his court read Rule 24(a)(2) as looking to the 'practical consequences' of denying intervention."). Even if the movant "could reverse an unfavorable ruling" in subsequent proceedings, "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds … will be difficult and burdensome." *Fund For Animals*, 322 F.3d at 735. API meets this standard because its interests will be negatively affected in a practical sense if Plaintiffs' lawsuit succeeds.

Plaintiffs seek, *inter alia*, to invalidate and vacate the BiOp. If granted, Plaintiffs' requested relief would have substantial negative impacts on Gulf of Mexico oil and gas activities because there would be no ESA consultation to support BOEM and BSEE permit approval process, resulting in delays for thousands of proposed permits every year. For example, BSEE reviewed and approved over 22,000 permits within a four-year period covered by NMFS's 2020 companion biological opinion for oil and gas activities in the Gulf of Mexico. *See Sierra Club*, No. 8:20-CV-03060, Dkt. 191-2 ¶ 9. Without a valid BiOp in place to support BOEM and BSEE's permit and plans approval process, API members will be unable to timely secure necessary permit approvals for ongoing and new operations. It could also cause API's members to halt or significantly constrain activities in the Gulf of Mexico, resulting in substantial economic losses. *See* Hopkins Decl. ¶¶ 9-11. Thus, resolution of this lawsuit in favor of Plaintiffs will practically impair and impede API's protectable interests.

### 4. API's Interests Will Not Be Adequately Protected by Existing Parties.

API's interests are substantially different from those of the Federal Defendants, warranting intervention. Showing inadequate representation is "not onerous" and requires only demonstrating that "representation of [their] interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Even when a party and intervenor-applicant share a common interest, there is no guarantee that there will be adequate representation of the intervenor-applicant's interests and those of its members. *County of San Miguel*, 244 F.R.D. at 48; *see also Fund For Animals*, 322 F.3d at 737 ("'a shared general agreement … does not necessarily ensure agreement in all particular respects'" (ellipsis in original; citation omitted)). "The tactical similarity of the present legal contentions of the [parties] … does not assure adequacy of representation or necessarily preclude the [intervenor-applicant] from the opportunity to appear in [its] own behalf." *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967).

The D.C. Circuit "look[s] skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots*, 788 F.3d at 321. The government's interest is different from that of private citizens because the government is "usually charged with 'represent[ing] the interests of the American people,' whereas aspiring intervenors … are dedicated to representing their personal interests or the interests of their members or members' businesses." *County of San Miguel*, 244 F.R.D. at 48 (brackets in original) (quoting *Fund For Animals*, 322 F.3d at 736); *see also Dimond*, 792 F.2d at 193 (compared to a government entity,

a private party seeks protection of "a more narrow and 'parochial' financial interest not shared by the" general public). Other courts have reached similar conclusions.[5]

The Federal Defendants do not adequately represent API's interests in this case. Indeed, API's interests and ultimate goal in this litigation are necessarily distinct from those of FWS, who is responsible for advocating for the general public and the environment. *See Friends of Animals*, 452 F. Supp. 2d at 70 (a federal agency must represent the interests of the American people whereas trade organizations advocate for their members' interests). The goal of API's members is to lawfully conduct oil and gas activities in the Gulf of Mexico, for which the BiOp is a necessary prerequisite. API will advocate to protect its and its members' business and regulatory interests. FWS cannot adequately advocate for these unique interests because it is bound to fulfill its statutorily mandated obligations under the ESA.[6] Only API can adequately represent its economic and regulatory interests in the Court's consideration of equitable factors (such as balancing of the hardships and the public interest) in determining, if necessary, whether to vacate the BiOp, impose conditions on any remand, or issue other injunctive relief. API's goals are therefore different from Federal Defendants' goals, and as a result, Federal Defendants do not adequately represent API's interests. *See Dimond*, 792 F.2d at 192.

---

[5] *See County of San Miguel*, 244 F.R.D. at 41-42 (noting intervention on the side of the consulting agency by a trade association and other nonprofit organizations whose interests in the land that would be impacted by a protected species listing decision); *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 901 (9th Cir. 2012) (noting intervention of Alaska Oil and Gas Association as defendant in challenge to biological opinion and Marine Mammal Protection Act incidental take regulations); *Kentuckians for Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 432 (4th Cir. 2003) (noting intervention on the side of the permitting agency by a mining industry trade association and the mineral rights owner whose land was subject to the permit).
[6] *See, e.g.*, 16 U.S.C. §§ 1531(b), 1536(a)(2) (ESA).

In sum, API meets all four requirements for intervention as of right to defend against Plaintiffs' first claim challenging the BiOp. Accordingly, API respectfully requests the Court to grant its motion under Rule 24(a).

**C.     In the Alternative, API Should Be Granted Permissive Intervention To Defend Against Both Claims in Plaintiffs' Complaint.**

In the alternative, API respectfully requests that the Court grant permission to intervene under Rule 24(b). API meets the requirements for permissive intervention for Claim I (BiOp) and Claim II (petition for rulemaking), as described below.

First, for the reasons set forth above, this motion is timely. This case is in its earliest stage, and no party will be prejudiced by intervention.

Second, API has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As set forth in its proposed Answer, API denies that Plaintiffs are entitled to the relief they seek and will defend against Plaintiffs' claims. *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (granting permissive intervention where proposed intervenor's claims and defenses have questions of law or fact in common with those in the pending action).

In addition to defenses related to the validity of the BiOP (Claim I), API intends to assert defenses specifically related to the alleged "delay" in responding to Plaintiffs' petition for rulemaking. Plaintiffs' complaint asserts that FWS violated the APA by not responding to Plaintiff CBD's 2022 rulemaking petition requesting revisions to its regulations that implement Section 7 of the ESA. *See* Plaintiffs' Complaint, Dkt. 1, ¶¶ 139-142. API intends to assert that these claims are moot because FWS initiated a public process to address these same issues in June 2023, and completed that public process with formal changes to the Section 7 consultation rules on April 5, 2024. *See* 89 Fed. Reg. 24268 (Apr. 5, 2024). Any claim related to earlier

petitions is now moot. Moreover, API intends to assert additional jurisdiction defects on the petition claim regarding Plaintiff CBD's efforts to bootstrap a challenge to the 2008 Solicitor Opinion into Claim II. Specifically, a petition for rulemaking brought under 5 U.S.C. § 553(e) is limited to the "issuance, amendment, or repeal *of a rule*," not the repeal of a memorandum, and, even if it did, Plaintiffs' 2022 petition *does not mention the* 2008 memorandum or ask for its repeal.[7] (Emphasis added.) Furthermore, if proceedings on a remedy occur, API will vigorously defend and protect its and its members' interests against the adverse interests of Plaintiffs and Federal Defendants.

Third, intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). API's participation creates no delay or prejudice to any party. Rather, intervention provides API a fair opportunity to defend its interests in the BiOp and the activities regulated by the BiOp and future biological opinions that may be affected by any actions that FWS may take with Plaintiff CBD's 2022 rulemaking petition. Allowing intervention so that API can defend its rights is the only equitable result under these circumstances. *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) ("[I]ntervention is a tool of judicial efficiency—'a practical [way of] disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" (second brackets in original) (quoting *Nuesse*, 385 F.2d at 700)).

## III. CONCLUSION

For the foregoing reasons, API meets the requirements for intervention pursuant to both Rule 24(a) and Rule 24(b) for Claim I (BiOp) and meets the requirements for permissive

---

[7] Plaintiff CBD's 2022 petition for rulemaking is available online. *See* CBD Petition to Strengthen the U.S. Endangered Species Act (Mar. 8, 2022), https://www.biologicaldiversity.org/campaigns/esa/pdfs/Petition-to-Strengthen-the-ESA-Implementing-Regss.pdf.

intervention for Claim II (petition for rulemaking). API respectfully requests that this Court grant this motion for leave to intervene in this proceeding without limitation. Its intervention will assist the fair, just, and efficient resolution of this lawsuit and ensure that those facing the greatest tangible harm from Plaintiffs' requested relief have a voice in this case.

A proposed Order is submitted herewith. As required by Rule 24(c), API has included with this motion, as Exhibit A hereto, its proposed Answer to the Complaint.

DATED:  June 12, 2024                    STOEL RIVES LLP


                                         /s/ Jason T. Morgan
                                         RYAN P. STEEN, Bar No. 1615260
                                         ryan.steen@stoel.com
                                         JASON T. MORGAN, Bar No. 1615129
                                         jason.morgan@stoel.com
                                         TIFFANY M. WANG (*pro hac vice pending*)
                                         tiffany.wang@stoel.com
                                         Stoel Rives LLP
                                         600 University Street, Suite 3600
                                         Seattle, WA  98101
                                         Telephone:  206.624.0900
                                         Facsimile:  206.386.7500

                                         *Attorneys for (Proposed) Intervenor-Defendant*
                                         *American Petroleum Institute*