# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEBRA HAALAND, et al., <br><br> Defendants. | Civil Action No. 1:24-cv-00990-DLF |

## DECLARATION OF HOLLY HOPKINS IN SUPPORT OF THE AMERICAN PETROLEUM INSTITUTE'S MOTION TO INTERVENE

1.  My name is Holly Hopkins. I make this Declaration on the basis of personal knowledge and am competent to testify to the matters stated in this Declaration, which are true and correct to the best of my knowledge, information, and belief.

2.  I am the Vice President of Upstream Policy for the American Petroleum Institute ("API") and have been employed at API for over 14 years. My work covers regulatory and legislative matters related to drilling and production from offshore oil and gas leases, focusing primarily on the environmental and safety laws, regulations, and policies relevant to those activities. I was employed by the Department of Interior ("DOI") for over seven years prior to joining API. At DOI, I served as Special Assistant to the Deputy Secretary and as Chief of Staff at the Minerals Management Service, which is now organized into the Bureau of Safety and Environmental Enforcement ("BSEE") and the Bureau of Ocean Energy Management ("BOEM"). In both positions, I performed a wide variety of tasks that included significant work related to federal offshore leasing and development policies and regulations. I have also authored

and co-authored papers related to natural resources issues and served as a guest speaker on multiple occasions.

3. API is the primary national trade association of the oil and gas industry. API represents nearly 600 member companies involved in major aspects of the U.S. oil and gas industry, including explorers, producers, refiners, suppliers, pipeline operators, marine transporters, and service and supply companies. Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and gas industry capable of meeting the energy needs of the nation in an efficient and environmentally responsible manner. One of API's purposes includes representation of the interests of the oil and gas industry in litigation, and API has on numerous occasions intervened as a party in litigation affecting those interests. API also develops oil and gas standards, conducts and sponsors research, engages with regulatory agencies, and participates in regulatory processes on behalf of its members and the oil and gas industry.

4. Oil and gas development in the United States is carried out exclusively by oil and gas companies. These companies acquire leases through a sealed bidding process, and then engage in exploration efforts that, if successful, will lead to production. API's members include federal leaseholders that have expended significant sums to obtain oil and gas leases from the federal government for the opportunity to explore for and develop valuable oil and gas resources, including on the Gulf of Mexico outer continental shelf ("OCS"). API's members have extensive experience with successful exploration and development of U.S. oil and gas resources on the Gulf of Mexico OCS.

5. API's members currently operate many offshore wells in the Gulf of Mexico. API's members are directly engaged in oil and gas exploration in the Gulf of Mexico and have

for decades been among the principal developers of offshore leases in the Gulf of Mexico. These members conduct oil and gas exploration and development activities—including, *inter alia*, drilling operations—on OCS leases. In addition to leaseholders and operators, API's members include companies that conduct geophysical and geological exploration activities and provide support services for offshore oil and gas development. These members provide, among other things, material, equipment, and other support services to federal lessees in developing their oil and gas resources. Almost all of API's members' Gulf of Mexico activities occur in areas offshore of Texas, Alabama, or Louisiana, with most of the associated vessel traffic to those areas originating from the Port of Galveston, Texas; Mobile, Alabama; and the Port of Fourchon, Port of Morgan City, and Port of Iberia, Louisiana. Almost all of those activities are carried out by members who either are headquartered or have offices in Houston, Texas, or New Orleans, Louisiana. Overall, API members invest billions of dollars each year to further the exploration and development of the oil and gas resources of the Gulf of Mexico.

6. I am familiar with the Endangered Species Act ("ESA") Biological Opinion on the effects of BOEM and BSEE proposed oil and gas leasing, exploration, development, production, decommissioning, and all related activities in the Gulf of Mexico OCS within existing leased areas and proposed leasing areas for a 10-year period issued by the U.S. Fish and Wildlife Service ("FWS") on April 20, 2018 (the "BiOp"). The BiOp addresses, *inter alia*, Gulf of Mexico oil and gas leasing, exploration, development, production, and decommissioning activities authorized by BSEE and BOEM. The BiOp concludes that those activities are not likely to jeopardize the continued existence of listed species under FWS's jurisdiction in the Gulf of Mexico and are not likely to destroy or adversely modify their designated critical habitat, if any.

7. The BiOp allows for routine OCS oil and gas activities to continue within the Gulf of Mexico and requires compliance with certain regulations or protocols in order to ensure compliance with safe operations. These requirements apply to many of the oil and gas activities carried out by API's members in the Gulf of Mexico. Because API's members must comply with the terms of the BiOp to carry out their activities to comply with the ESA, the BiOp directly implicates their interests. Since the BiOp was issued, BOEM has required companies operating in the Gulf of Mexico, including members of API, to comply with the terms of the BiOp as conditions of permits issued by BOEM. Those permits are processed and issued by BOEM's Gulf of Mexico Regional Office.

8. For these reasons, API and its members have a direct interest in the BiOp and this litigation. The relief requested by Plaintiffs, including vacatur of the BiOp and injunctive relief, would have substantial negative impacts on API and its members. Vacatur of the BiOp would eliminate the ability of API's members to carry out their activities in the Gulf of Mexico in compliance with the ESA. Such a result could expose API's members to enforcement actions by the federal government or citizen suits under the ESA. It could also cause API's members to halt or significantly constrain exploration and development activities in the Gulf of Mexico, resulting in substantial economic losses. Settlement of this action would directly implicate and potentially negatively impact the interests of API or its members, which are adverse to the interests of the other parties in this action. An injunction or court-ordered remand could also impose or result in new burdens on API's members operating in the Gulf of Mexico and otherwise cause delays and disruptions to activities.

9. In short, if Plaintiffs prevail in this lawsuit, current approvals affecting ongoing operations may be jeopardized, substantial disruptions and delays would likely occur for future

operations, and API's members would likely incur significant costs due to these disruptions and delays. Therefore, the instant litigation directly affects API and its members, and resolution of this lawsuit in favor of Plaintiffs will practically impair and impede the shared and significantly protectable interests of API and its members.

10. Conversely, a favorable outcome for Defendants would result in the continuing validity of authorizations necessary for API's members to comply with the ESA. Such an outcome would also help API achieve its mission to ensure a strong, viable U.S. oil and natural gas industry capable of meeting the energy needs of the nation in an efficient and environmentally responsible manner. A favorable outcome for Defendants would also further API's interest in the responsible and correct application of existing federal regulations and laws, thereby providing more regulatory, economic, and conservation certainty for the U.S. oil and gas industry.

11. API's and its members' unique business interests significantly differ from the interests of the other parties in this lawsuit. As set forth above, Plaintiffs seek relief that would have severe negative impacts on API and its members. Defendants regulate the activities of API's members under federal laws and do not seek to advance or support the business interests of API and its members.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information and belief.

Executed on June 4, 2024, in Washington, D.C.

Holly Hopkins