**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>        *Plaintiffs*,<br><br>   v.<br><br>DOUG BURGUM, *et al.*,<br><br>        *Defendants*,<br><br>  and<br><br>AMERICAN PETROLEUM INSTITUTE,<br><br>        *Defendant-Intervenor*. | No. 1:24-cv-00990-DLF |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL AND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 15(d), the parties' Joint Status Report (Dkt. No. 29), and the Court's Minute Order of June 27, 2025, Plaintiffs Center for Biological Diversity and Dr. Stuart Pimm hereby move the Court for leave to file a First Supplemental and Amended Complaint. Specifically, Plaintiffs seek leave to supplement and amend their complaint to add one claim for relief and supporting factual allegations regarding a 2025 consultation that Federal Defendants—the Secretary of the Interior, U.S. Department of the Interior, and U.S. Fish and Wildlife Service—issued under the Endangered Species Act. That consultation purports to evaluate new information since the issuance of the 2018 Biological Opinion at issue in Plaintiffs' first claim for relief, and determines, *inter alia*, that its conclusions remain valid. *See* Monsell Decl., Ex. 1 at 1–2, 10. The new proposed claim therefore directly

relates to Plaintiffs' first claim, as both involve Federal Defendants' failure to properly consider and mitigate the effects of oil and gas activities in the Gulf of Mexico on endangered and threatened species. *Compare* Pls.' Compl., Dkt. No. 1 *with* Attachment 1 (Proposed First Supplemental and Amended Complaint). Supplementation serves the interests of judicial efficiency as it will allow these related issues to be resolved in a single lawsuit and avoid redundancy. The proposed First Supplemental and Amended Complaint would also eliminate several allegations regarding inadequacies in the 2018 Biological Opinion, withdraw Plaintiffs' current second claim for relief, and remove Dr. Stuart Pimm as a plaintiff in this case, thereby narrowing the issues before the Court and promoting efficiency.

Prior to filing, counsel for Plaintiffs conferred with counsel for Federal Defendants and Defendant-Intervenor American Petroleum Institute as required by Local Rule 7(m). Federal Defendants indicated through counsel that they will reserve their position on Plaintiffs' Motion until they see the papers filed by Plaintiffs. Counsel for Defendant-Intervenor indicated the same.

Pursuant to the Court's Standard Order for Civil Cases, Dkt. No. 6 at 2, and Local Civil Rule 7(i), both a redlined and clean version of Plaintiffs' proposed pleading are attached, along with a proposed order granting this Motion.

**BACKGROUND**

This case involves the failures of Federal Defendants—the Secretary of the Interior, the U.S. Department of the Interior, and the U.S. Fish and Wildlife Service (collectively, the Service)—to comply with the Endangered Species Act (ESA) in evaluating the harmful effects of oil and gas drilling activities in the Gulf of Mexico (Gulf) on nesting sea turtles, whooping cranes, manatees, and other endangered and threatened species under the Service's jurisdiction. *See generally* Pls.' Compl., Dkt. No 1.

2

Specifically, on April 8, 2024, Plaintiffs Center for Biological Diversity (the Center) and Dr. Stuart Pimm filed this action alleging two claims for relief. *See id.* ¶¶ 133–44. Plaintiffs' first claim alleges that the Service's 2018 Biological Opinion—purporting to evaluate the effects of 50 years-worth of extensive oil and gas activities in the Gulf on nesting Kemp's ridley and loggerhead sea turtles, manatees, Cape Sable seaside sparrows, Mississippi sandhill cranes, piping plovers, rufa red knots, whooping cranes, and several species of beach mice—violates the ESA and the Administrative Procedure Act. *Id.* ¶¶ 133–37. Plaintiffs have alleged that the biological opinion—which concludes that decades of Gulf drilling activities would not kill, injure, harm, or harass a single member of any listed species—arbitrarily and capriciously ignores the climate change–related effects of oil and gas drilling in the Gulf; fails to properly evaluate the environmental baseline; fails to adequately consider the effects of oil spills, vessel strikes, bird collisions with oil rigs, and light pollution from oil and gas activities; improperly relies on uncertain and non-binding mitigation measures; and fails to include a legally required incidental take statement for take reasonably certain to occur from such activities. *Id.*

Plaintiffs' second claim for relief challenges the Service's unreasonable delay in responding to the Center's 2022 petition requesting that the agency amend its ESA implementing regulations to require the Service to properly consider the climate effects of agency actions, among other requested changes. *Id.* ¶¶ 138–44.

Shortly after Plaintiffs filed the case, the parties entered mediation before a magistrate judge. *See* Min. Order, July 11, 2024. The mediation resulted in a settlement agreement under which the Service agreed to (1) issue a new consultation by March 28, 2025, and evaluate whether that consultation should address several of the deficiencies that Plaintiffs raised in their lawsuit, and (2) respond to a narrowed version of Plaintiffs' petition by March 28, 2025. *See*

Stip. and Joint Mot. to Stay 2–4, Dkt. No. 25. In light of the agreement, the parties sought and

the Court granted, a stay of the case until the new consultation was completed—through March

28, 2025. *See id.* at 4–5; Min. Order, Dec. 7, 2024. The Service issued the new consultation on

March 28, 2025, and responded to Plaintiffs' petition on March 26, 2025. *See* Joint Status Report

2, Dkt. No. 28. The parties then jointly sought, and the Court granted, additional stays to provide

Plaintiffs time to review the relevant documents and file either a motion to amend their

complaint or motion to dismiss. *See id.* at 2–3; Min. Order, Mar. 31, 2025; *see also* Min. Order,

June 27, 2025 (setting a briefing schedule for a motion for Plaintiffs to file amended complaint).

Plaintiffs now seek to supplement their complaint to challenge the 2025 consultation,

which (1) determines the 2018 Biological Opinion's findings remain valid—and thus implicates

many of the same legal and factual issues already before the Court; and (2) concludes that Gulf

oil and gas drilling activities will likely not adversely affect the black-capped petrel, a newly

listed species. Plaintiffs' First Supplemental and Amended Complaint would also remove certain

allegations about the 2018 Biological Opinion, remove Plaintiffs' current second claim for relief,

and remove one of the plaintiffs in this case, thereby narrowing the issues before the Court.

## ARGUMENT

The Court should allow Plaintiffs to supplement and amend their Complaint in this case.

Leave to supplement and amend shall be freely given, Plaintiffs did not unduly delay filing this

Motion, no party will be unduly prejudiced by granting it, and the new claim is not futile. The

requested relief would promote judicial economy and the efficient resolution of the controversy

between the parties.

## I.    Legal Standard

Pursuant to Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms,

permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). As the Supreme Court has long held, the rule "plainly permits supplemental amendments to cover events happening after suit" and its "basic aim … [is] to make pleadings a means to achieve an orderly and fair administration of justice." *Griffin v. Cty. Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 227 (1964). Rule 15(a)(2) provides that "a party may amend its pleading … with … the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule establishes "a liberal … policy" in favor of granting leave to amend. *Norris v. Salazar*, 746 F. Supp. 2d 1, 3 (D.D.C. 2010).

A court evaluates motions to supplement a complaint under Rule 15(d) under "the same standard" as motions to amend under Rule 15(a)(2). *Fritch v. U.S. Dep't of State*, No. 15-00430 (APM), 2015 WL 13711460, at *1 (D.D.C. Nov. 13, 2015) (citation omitted). Under this standard, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or … undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962); *see also Powell v. IRS*, 263 F. Supp. 3d 5, 7 (D.D.C. 2017) (citations omitted) (similar). "Because leave to amend should be liberally granted, the party opposing amendment bears the burden of coming forward with a colorable basis for denying leave to amend." *Parker v. John Moriarty & Assocs.*, 249 F. Supp. 3d 507, 512 (D.D.C. 2017).

## II.  Granting This Motion Will Promote the Speedy Resolution of the Center's Claims Without Causing Any Undue Delay or Prejudice

Granting Plaintiffs' Motion will promote the prompt resolution of the Center's claims against the Service without causing any undue delay or prejudice to the parties.

First, granting Plaintiffs' Motion will promote judicial efficiency and avoid duplicative

litigation. The proposed supplementation to challenge the Service's 2025 consultation is related to the current action: the agency's failure to comply with the ESA in evaluating the effects of federally authorized Gulf oil and gas activities on endangered and threatened species. It involves many of the same facts, the same law, and the same defendants. *Compare* Dkt. No. 1 *with* Attachment 1 (First Supplemental and Amended Complaint). The documents themselves are also intertwined given the 2025 consultation relies on the 2018 Biological Opinion and determines that the 2018 conclusions, such as the failure to consider the effects of a catastrophic oil spill, remain valid. *See* Monsell Decl., Ex. 1 at 1–2, 4–5.

In other words, the Service's new consultation is the agency's latest action in its "continued, persistent efforts to circumvent" its legal obligations under the ESA in evaluating the effects of oil and gas activities in the Gulf. *See Griffin*, 377 U.S. at 226. Given the similarities in the questions of fact, the causes of action, and the parties, supplementation and amendment will allow the Court to adjudicate the closely related challenges as one case rather than requiring the Center to initiate a separate lawsuit against the Service; requiring the Service to respond to that lawsuit and submit separate, largely similar administrative records; and requiring Defendant-Intervenor to seek to intervene in and respond to that lawsuit. *See Fund for Animals v. Hall*, 246 F.R.D. 53, 55 (D.D.C. 2007) (granting leave to supplement complaint where the motion "raise[d] similar legal issues to those already before the court, thereby averting a separate, redundant lawsuit," and served "[t]he interests of judicial economy and convenience").

And the proposed amendments to delete the legal and factual allegations regarding how the 2018 Biological Opinion failed to consider the climate change–related effects of authorizing Gulf oil and gas drilling, and to remove Plaintiffs' current second claim for relief challenging the Service's unreasonable delay in responding to the Center's rulemaking petition (and remove Dr.

Stuart Pimm as a plaintiff in this action) will narrow the issues currently before the Court.

Second, granting Plaintiffs' Motion will not cause any undue delay. This case is still in its early stages and Plaintiffs seek to supplement their complaint within the timeline jointly agreed to by the parties and approved by the Court. *See* Joint Status Report 2, Dkt. No. 29; Min. Order, June 27, 2025; *cf. Fund for Animals*, 246 F.R.D. at 55 (granting motion for leave to supplement complaint filed four years after original complaint and noting that "delay without the requisite prejudice is ordinarily insufficient to justify denial of leave to amend" (citation omitted)).

Third, granting Plaintiffs' Motion will not unduly prejudice the Service or Defendant-Intervenor. To demonstrate prejudice, a party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *In re Vitamins Antitrust Litig*., 217 F.R.D. 30, 32 (D.D.C. 2003) (citation omitted); *see also id*. ("In essence, to show prejudice, the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding."). No such showing can be made here. Both the Service and Defendant-Intervenor will have the opportunity to answer the First Supplemental and Amended Complaint; the Service will still have the opportunity to submit the administrative record for the 2018 Biological Opinion and 2025 consultation; and both the Service and Defendant-Intervenor can still defend this case through summary judgment briefing.

Finally, the proposed new claim is not futile. A claim is futile "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lee v. Winter*, 439 F. Supp. 2d 82, 84–85 (D.D.C. 2006) (citation omitted). Here, the Center seeks to challenge the 2025 consultation for failing to comply with the ESA and the Administrative Procedure Act. Among other things, the Center's proposed First Supplemental

and Amended Complaint alleges facts demonstrating (1) the Service failed to base its 2025 consultation on the best available science and (2) its conclusion that Gulf oil and gas drilling activities are not likely to adversely affect the endangered black-capped petrel is contrary to the evidence before the agency. These facts, and others, will show that the Service's 2025 consultation violates the ESA. Courts regularly review the Service's (or the National Marine Fisheries Service's, depending on the species at issue) determinations regarding whether and how an activity will likely adversely affect endangered and threatened species for compliance with the ESA and Administrative Procedure Act. *See, e.g.*, *El Puente v. U.S. Army Corps of Engr's*, 100 F.4th 236, 253–56 (D.C. Cir. 2024) (reviewing the National Marine Fisheries Service's conclusion that a "project 'is not likely to adversely affect' any threatened species of coral under the ESA" (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion For Leave to File the First Supplemental and Amended Complaint.

DATED: July 21, 2025                    Respectfully submitted,

                                        */s/ Kristen Monsell*
                                        Kristen Monsell (DC Bar No. CA00060)
                                        kmonsell@biologicaldiversity.org
                                        David Derrick (Admitted *pro hac vice*)
                                        dderrick@biologicaldiversity.org
                                        CENTER FOR BIOLOGICAL DIVERSITY
                                        2100 Franklin St., Suite 375
                                        Oakland, CA 94612
                                        Phone: (510) 844-7137

                                        *Attorneys for Plaintiffs*